

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00099-CR

GRAYLIN RUSK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR 11-023

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Graylin Rusk has appealed the action of the trial court's revocation of his community supervision. Rusk had been placed on community supervision in Rusk County as a result of a plea agreement after he had been charged with leaving the scene of an accident in which someone had received serious bodily injury. Under that plea agreement (entered July 12, 2011), Rusk's five-year sentence had been suspended and Rusk had been placed on community supervision for five years. On March 23, 2012, the State filed a motion to revoke the community supervision, alleging that Rusk had violated the terms of community supervision (1) by committing the offense of aggravated assault, TEX. PENAL CODE ANN. § 22.02 (West 2011), (2) by committing the offense of resisting arrest, search, or transportation, TEX. PENAL CODE ANN. § 38.03 (West 2011), and (3) by failing to pay his community supervision fees and attorney's fees.

At the plea hearing, Rusk entered a plea of "true" to the charge of having failed to pay the community supervision fees and the attorney's fees, but entered a plea of "not true" to charges that he had committed either of the offenses mentioned above. The State abandoned the two criminal offenses as causes for the revocation of Rusk's community supervision and proceeded solely on its allegations that Rusk had failed to pay the supervision and attorney's fees. Acknowledging the parties had not reached a plea agreement concerning the revocation, the State requested Rusk's community supervision be revoked and the five-year prison sentence imposed.

Rusk responded that he lacked the ability to pay the fees and claimed it to be unconstitutional under both the United States and Texas Constitutions to revoke community supervision based solely on poverty. The State's response, in its entirety, was as follows:

2

Judge, there's no evidence before the Court of his inability to pay. There's what Mr. Davidson said, but there's no evidence of it, nothing to rely upon. He bargained for 5. He's done very little while on probation. It's time to be revoked and go on.

Neither side presented any evidence concerning Rusk's ability to pay the fees he was ordered to pay as conditions of his community supervision, and the record contains no discussion of alternatives to imprisonment. On appeal, Rusk argues that the revocation of his community supervision based solely on his failure to pay the fees violates the United States Constitution.[1]

The standard of review for a trial court's decision to revoke community supervision is to ascertain whether there has been an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). A trial court abuses its discretion if its decision lies outside the zone of reasonable disagreement. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990).

Some thirty years ago, the United States Supreme Court ruled a trial court must first make an inquiry into the ability of the defendant to pay fees ordered to have been paid before revoking based upon the failure to pay; the absence of such an inquiry heralds a violation of the Due Process and the Equal Protection Clauses of the United States Constitution. *Bearden v. Georgia*, 461 U.S. 660, 672–73 (1983). In *Bearden*, the State had originally listed two grounds for revocation of probation: (1) that Bearden had committed burglary and (2) that he had not paid a fine and restitution he had been ordered to pay as conditions of probation. However, the burglary grounds were abandoned and the State proceeded solely on Bearden's failure to pay the

---

[1]Although the issue as stated would appear to be sufficiently broad as to permit challenges on both Constitutional and statutory grounds, the authorities upon which Rusk relies in his brief are restricted to the Constitutional issue.

fine or make the restitution. *Id.* at 663 n.2. Those fact circumstances are quite similar to those found in this case. The Court in *Bearden* noted that "if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Id.* at 667–68. *Bearden* recognized only two exceptions to this general rule: (1) when "probationer has willfully refused to pay the fine or restitution when he has the means to pay,"[2] or (2) "[o]nly if the sentencing court determines that alternatives to imprisonment are not adequate in a particular situation to meet the State's interest in punishment and deterrence may the State imprison a probationer who has made sufficient bona fide efforts to pay."[3] The Court then summarized its ruling as follows:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id.* at 672–73.

The Texas Court of Criminal Appeals has recently provided some additional guidance concerning *Bearden* in its case of *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012),

---

[2]*Bearden*, 461 U.S. at 668.

[3]*Id.* at 672.

4

wherein a decision of the Beaumont Court of Appeals employed an evidentiary sufficiency examination to a *Bearden* inquiry. In that case, the Texas Court of Criminal Appeals concluded that *Bearden* "prescribes a mandatory judicial directive, not a prosecutorial evidentiary burden." *Id*. at 157. Remanding the case for reconsideration by the Beaumont court, the Texas Court of Criminal Appeals instructed that the court of appeals should first examine whether any violation of the Texas "ability-to-pay statute," TEX. CODE CRIM. PROC. ANN. art. 42.12, § 21(c) (West Supp. 2012), had occurred and whether any complaint regarding such a violation had been preserved for appellate review. *Gipson*, 383 S.W.3d at 157. Noting, but not deciding, that the ability-to-pay statute may not apply to all of the fees at issue, the court instructed that should the Beaumont court determine that the ability-to-pay statute is inapplicable, it must then consider whether there was any preserved error regarding a violation of Texas common law. *Id*. at 158. The Texas Court of Criminal Appeals directed that the Beaumont court consider the application of Constitutional issues in *Bearden* only after addressing both of these sufficiency issues. *Id*. at 157–58.

It is notable that *Gipson* differs from this case in that the appellant in *Gipson* raised two issues on appeal. The first issue raised sufficiency of the evidence and the second issue alleged the trial court "committed constitutional error." *Id*. at 154. In contrast, Rusk's sole[4] issue on appeal is:

---

[4]In a footnote, Rusk notes the trial objection under the Texas Constitution referenced an incorrect section of the Texas Constitution and states, "Appellant is hesitant to claim that error was properly preserved under the TX Constitution in terms of the exact *Section* of the TX Constitution, although Appellant argues that error was claimed and properly preserved under the correct *Article* (of the TX Constitution)." We note that error is preserved for appellate review when the trial objection has "sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1. Because Rusk has not provided this Court with any authority that the Texas Constitution provides greater protection than the United States

5

Did the Trial Court, During the Defendant/Appellant's Motion to Revoke Hearing, Incorrectly Interpret or Apply Current Law and Thereby Impermissibly Revoke the Defendant/Appellant's Community Supervision (Probation) and Sentence Mr. Rusk to Five Years?

It should be noted that Rusk does not explicitly raise the Texas ability-to-pay statute. The State raises a counterpoint arguing that if there was error, Rusk had waived it when he entered his plea of "true." Because of (1) the explicit instructions in *Gipson* to consider the ability-to-pay statue before addressing any constitutional issues, (2) the broad language of Rusk's issue as it is worded, and (3) the general rule that statutory violations should be addressed before addressing any constitutional arguments,[5] we will address the Texas ability-to-pay statute[6] as well as any violation of *Bearden*.

**(1) The Plea of "True" Did Not Effect a Waiver of the Rights Under the Ability-to-Pay Statute**

At the revocation hearing, the State argued there was "no evidence before the Court of [Rusk's] inability to pay," leading one to conclude that the State may have believed this issue was an affirmative defense on which the defendant had the burden of proof. At one time, this would have been correct. From 1977 until 2007, the inability to pay probation fees was an

---

Constitution, it is not necessary for us to express any opinion concerning whether any error was preserved under the Texas Constitution.

[5]*See, e.g., Patterson v. State*, 152 S.W.3d 88, 90 (Tex. Crim. App. 2004).

[6]We note that Texas law is clear that we have authority to address unassigned error in criminal cases. *See, e.g., Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex. Crim. App. 2012) ("[A]ppellate courts may review unassigned error—a claim that was preserved in the trial court but was not raised by either party on appeal."); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006) (reaffirming authority to address unassigned error, but noting it must be preserved); *Olivas v. State*, 202 S.W.3d 137 (Tex. Crim. App. 2006) (affirming review of unassigned jury charge error); *Wright v. State*, 981 S.W.2d 197, 199 n.2 (Tex. Crim. App. 1998) (appellate court may, in its discretion, consider unassigned error); *Carter v. State*, 656 S.W.2d 468 (Tex. Crim. App. 1983).

affirmative defense to revocation. *See Gipson*, 383 S.W.3d at 158. The current statute, though, places the burden of proof on the State:

> In a community supervision revocation hearing at which it is alleged only that the defendant violated the conditions of community supervision by failing to pay compensation paid to appointed counsel, community supervision fees, or court costs, **the state must prove by a preponderance of the evidence** that the defendant was able to pay and did not pay as ordered by the judge. The court may order a community supervision and corrections department to obtain information pertaining to the factors listed under Article 42.037(h) of this code and include that information in the report required under Section 9(a) of this article or a separate report, as the court directs.

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 21(c) (emphasis added).[7] The record fails to contain any evidence that Rusk's failure to pay was willful.[8]

As mentioned previously, it was ruled in *Gipson* that both the issue of error preservation and that of procedural default due to the plea of "true" must be addressed. Therefore, we must determine whether any error has been preserved for appellate review.[9] In *Gipson*, no objection

---

[7]*See generally* CRIMINAL JUSTICE COMM., BILL ANALYSIS, Tex. H.B. 312, 80th Leg., R.S. (2007) ("This bill conforms the statute to the requirements of the Due Process Clause as interpreted by the United States Supreme Court in *Bearden v. Georgia.*").

[8]The State argues we can infer that Rusk paid some fees and, therefore, a reasonable person could conclude Rusk had the ability to pay. The State makes this inference based on a review of the conditions for community supervision which ordered payment of $400.00 for compensation for appointed counsel, but the motion to revoke only alleged $355.00. Neither document, though, was introduced as evidence at the hearing. Further, the State did not allege the failure to pay was willful. Lastly, the Texas Court of Criminal Appeals noted in *Menefee* that although a guilty plea is an admission of guilt, a guilty plea "does not provide independent evidence to substantiate the defendant's guilt." *Menefee v. State*, 287 S.W.3d 9, 18 (Tex. Crim. App. 2009). Similarly, a plea of "true" is an admission of the validity of the State's allegations, but is not independent evidence of those allegations. The record does not contain any evidence.

[9]The plea of "true" was antecedent to the trial court's decision to revoke. We note the *Helms* rule, as modified by *Young*, only applies to errors occurring before the entry of the plea. *Young v. State*, 8 S.W.3d 656, 666–67 (Tex. Crim. App. 2000) (limiting rule announced in *Helms v. State*, 484 S.W.2d 925 (Tex. Crim. App. 1972) (guilty plea waives all nonjurisdictional defects), to only when judgment of guilt was rendered independent of error); *Brasfield v. State*, 30 S.W.3d 502, 503 (Tex. App.—Texarkana 2000, pet. ref'd); *Gates v. State*, 696 S.W.2d 671, 674 (Tex. App.—Dallas 1985, no pet.) (applying *Helms* rule to probation revocation plea). Because the error complained of in this appeal occurred after the entry of the plea of "true," the *Helms* rule, as modified by *Young*, does not apply.

was made at trial. In this case, Rusk clearly objected based on protections provided by the Constitutions of both the United States and Texas, but failed to make any objection concerning the Texas ability-to-pay statute.

In *Marin v. State*, the Texas Court of Criminal Appeals held that "our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *modified on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (Except for structural errors, "no error . . . is categorically immune to a harmless error analysis."). "All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong[,]" including "[m]any constitutional rights."[10] Absolute requirements and prohibitions include jurisdictional issues and the Separation of Powers Section of the Texas Constitution.[11] Examples of rights that are waivable-only include the rights to the assistance of counsel and to trial by jury.[12]

In *Lively*, this Court held that a plea of "true" does not waive a violation of *Bearden* when the State did not allege in its motion to revoke that the failure to pay was willful. *Lively v. State*,

---

[10]*Marin*, 851 S.W.2d at 279; *see Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (admissibility of evidence, even if constitutional rights are implicated, is forfeitable right); *State v. Moore*, 225 S.W.3d 556, 569–70 (Tex. Crim. App. 2007) (State forfeited prohibition against late-filed amendments to motions for new trial by failing to object).

[11]*Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002), *modified sub silencio by Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) ("a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute"); *see Gutierrez v. State*, 380 S.W.3d 167, 177 (Tex. Crim. App. 2012) ("a condition of community supervision that effectively operates to deport a probationer violates an absolute prohibition and is therefore not subject to ordinary principles of waiver or procedural default.").

[12]*Saldano*, 70 S.W.3d at 888; *cf. Phillips v. State*, 362 S.W.3d 606 (Tex. Crim. App. 2011) (ex post facto violation not forfeitable right).

338 S.W.3d 140, 145 (Tex. App.—Texarkana 2011, no pet.). Although the Texas Court of Criminal Appeals has since clarified the differences between the Texas ability-to-pay statue and *Bearden*, we are not convinced we should deviate from our prior precedent.

The Texas Court of Criminal Appeals noted in *Gipson* that it was presented with a similar question in *Menefee*, 287 S.W.3d 9 (remanding for consideration of whether Article 1.15 could be procedurally defaulted). *Gipson*, 383 S.W.3d at 156. Similar to the Texas ability-to-pay statute (which requires evidence of an inability to pay),[13] Article 1.15 requires evidence to be introduced to support a guilty plea. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15. The United States Constitution places no evidentiary burden on the State to present evidence supporting a guilty plea. *See Menefee*, 287 S.W.3d at 13. In contrast, the Federal Rules of Criminal Procedure contain a mandatory judicial directive to "determine that there is a factual basis for the plea." *See* FED. R. CRIM. P. 11(b)(3); *Menefee*, 287 S.W.3d at 19 (Womack, J., concurring). As noted above, the Texas ability-to-pay statute imposes an evidentiary burden on the State while *Bearden* imposes a mandatory judicial directive to inquire into a defendant's ability to pay. Similarly, Article 1.15 imposes an evidentiary burden on the State, while the Federal Rules impose a mandatory judicial directive to inquire into the factual basis of the plea.

On remand, the Tyler court concluded that the requirements in Article 1.15 amounted to an absolute right. *See Menefee v. State*, No. 12-07-00001-CR, 2010 Tex. App. LEXIS 6665 (Tex. App.—Tyler Aug. 18, 2010, pet. ref'd) (mem. op., not designated for publication). That determination was based on two grounds: (1) the general rule that sufficiency of the evidence

---

[13]We note there are differences between the two statutes. For example, the Texas ability-to-pay statute requires proof by a preponderance of the evidence, while Article 1.15 does not. *Compare* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 21(c) *with* TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005).

issues cannot be forfeited and (2) the Legislature's choice of using the phrase "in no event" in the statute. *Id.* at \*12 (quoting TEX. CODE CRIM. PROC. ANN. art. 1.15).

Similar to the reasoning of the Tyler court in *Menefee*, we conclude that the error at issue (i.e., any violation of the Texas ability-to-pay statute) is not one that can be forfeited. The Texas Court of Criminal Appeals has specifically noted the Texas ability-to-pay statute imposes an evidentiary burden on the State, and our review employs a sufficiency of the evidence analysis. *Gipson*, 383 S.W.3d at 159. Texas law is clear that sufficiency of the evidence cannot be forfeited and does not need to be preserved for appellate review. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010) ("sufficiency of evidence of [defendant's] financial resources and ability to pay were likewise not waived by his failure to raise such a complaint at trial"); *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004); *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001). Rusk was not required to object in order to avoid forfeiture of a sufficiency of the evidence issue.

The Texas ability-to-pay statute does not contain language which is the same or similar to the "in no event" language of Article 1.15. It is not necessary, however, for us to determine whether the Texas ability-to-pay statute contains an absolute right or a waiveable-only right. Assuming, without deciding, that the Texas ability-to-pay statute can be waived, the "true" plea was not a waiver.

The State argues the result of the plea of "true" was that "[a]ppellant did not put the issue of his inability to pay before the court." The State cites *Garner v. State*, No. 06-12-00075-CR, 2012 Tex. App. LEXIS 9011 (Tex. App.—Texarkana Oct. 31, 2012, no pet. h.) (mem. op., not designated for publication) in support of its argument. *Garner* descends from the *Cole/Mitchell*

10

line of cases.  *See, e.g.*, *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. [Panel Op.] 1979); *Cole v. State*, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979); *Mitchell v. State*, 482 S.W.2d 221 (Tex. Crim. App. 1972).

We note that Texas courts have routinely stated, without much analysis, that a plea of "true" is sufficient, standing alone, to support the revocation of community supervision.  *See, e.g.*, *Moses*, 590 S.W.2d at 470; *Cole*, 578 S.W.2d at 128; *Duncan v. State*, 321 S.W.3d 53, 58 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).  This line of cases is based on the reasoning that a plea of "true" relieves the State of its evidentiary burden.  *See Cole*, 578 S.W.2d at 128; *Mitchell*, 482 S.W.2d at 222.

We believe it is possible to over-simplify the effects of the *Cole/Mitchell* line of cases by robotic application to a plea of "true."  While the general rule will often dictate the outcome, this case presents a circumstance in which the plea of "true" is not sufficient to waive all requirements that evidence be presented.  As noted by the Texas Court of Criminal Appeals in *Gipson*, the *Cole/Mitchell* line of cases predates both *Marin* and the enactment of the Texas ability-to-pay statute.  *See Gipson*, 383 S.W.3d at 156.  We observed in *Lively* that "[u]nder normal circumstances, Lively's plea of true to the allegations . . . would be sufficient to support the trial court's judgment."  *Lively*, 338 S.W.3d at 145–46.  While a plea of "true" may relieve the State of its evidentiary burden concerning the facts alleged in the State's motion to revoke, the State did not allege in this case that Rusk's failure to pay fees was willful.

Further, the plea of "true" did not constitute an intentional relinquishment of rights under the Texas ability-to-pay statute.  For a waiver of a statutory right to be valid under the Due Process Clause, it must be "an intentional relinquishment of a known right or privilege."

11

*Aguirre-Mata v. State*, 992 S.W.2d 495, 499 (Tex. Crim. App. 1999) (quoting *Johnson v. Zerbst*, 304 U.S. 458 (1938)). A defendant violates his community supervision by failing to pay fees regardless of whether the failure to pay fees is willful. The Texas ability-to-pay statute, though, only permits imprisonment when the failure to pay fees was willful.[14] Rusk's plea of "true" was only an admission that he violated the terms of his community supervision by failing to pay the fees he was ordered to pay; it was not an admission of the additional fact of willfulness (which is required for imprisonment). In other words, although Rusk admitted that he did not pay the fees as ordered, he did not admit that he had done so willfully. Therefore, Rusk's plea of "true" was not an intentional relinquishment. Under the circumstances presented here, the plea of "true" did not waive the Texas ability-to-pay statute.

To the extent Rusk's issue raises a violation of the Texas ability-to-pay statute, the record fails to contain any evidence of a willful failure to pay; therefore, the trial court abused its discretion in revoking Rusk's community supervision.[15] Because all of the fees Rusk failed to pay are governed by the Texas ability-to-pay statute, it is not necessary for us to determine whether the Texas common law applies to other fees and fines.[16]

---

[14]Revocation is not the only option available upon a finding that a community supervision condition has been violated. The trial court has discretion to continue or modify the terms and conditions of community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 22(a) (West Supp. 2012); *cf. Perry v. State*, 367 S.W.3d 690, 695 (Tex. App.—Texarkana 2012, no pet.).

[15]To the extent a harmless error analysis is appropriate, harm has been established. *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (suggesting harmless error analysis inappropriate when standard of review was abuse of discretion). When a nonconstitutional error occurs, it will be disregarded as harmless if the error did not affect the substantial rights of the defendant. TEX. R. APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is implicated when the error had a substantial and injurious effect or influence. *King*, 953 S.W.2d at 271. The error resulted in Rusk being imprisoned rather than remaining on community supervision. We conclude this error caused a substantial and injurious effect and is a reversible error.

[16]The 2007 amendments removed restitution and fines from the Texas ability-to-pay statute. *Lively*, 338 S.W.3d at 144. As noted above, the Texas Court of Criminal Appeals, in *Gipson*, instructed the Beaumont court to consider

12

**(2)     The Violation of *Bearden* Was Preserved and Was Not Waived by the Plea of "True"**

At trial and on appeal, Rusk has complained that the revocation of his community supervision was entered without an inquiry into his ability to pay and that lack of inquiry was unconstitutional. We conclude the *Bearden* issue has been preserved for our review and is reversible error.

It is not necessary for us to determine whether *Bearden* concerns rights that are absolute, waiveable only, or forfeitable. Even if *Bearden* concerns rights that can be forfeited,[17] error has been preserved under the facts of this case. At the revocation hearing, Rusk complained that a revocation resulting in imprisonment would be a constitutional violation. Rusk alleged that he lacked the ability to pay the fees, claiming that it is unconstitutional under both the United States and Texas Constitutions to revoke community supervision based solely on poverty. Rusk's objection consumed approximately one-sixth of the revocation hearing and was sufficient to make the trial court aware of his complaint. *See* TEX. R. APP. P. 33.1. Assuming, without deciding, that *Bearden* concerns forfeitable rights, Rusk made a sufficient objection to avoid any forfeiture.

The State argues that Rusk's plea of "true" was "an admission that he failed to pay court costs, supervision fees and court appointed attorney reimbursement" and that the State was "entitled to rely upon Appellant's plea of true that he committed the conduct alleged against

---

whether the Texas common law governed these fees. *Gipson*, 383 S.W.3d at 158. Because none of the State's allegations concerned restitution or fines, it is not necessary for us to address this issue.

[17]We note the Texas Court of Criminal Appeals has stated, in dicta, "[i]n contrast to evidence-sufficiency challenges, for which no preservation of error is required, challenges to the propriety of trial-court rulings must be preserved for appeal." *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012).

13

him." As noted above, the State relies on the *Cole*/*Mitchell* line of cases. The sole justification for this rule is that a plea of "true" relieves the State of its evidentiary burden. *See Cole*, 578 S.W.2d at 128; *Mitchell*, 482 S.W.2d at 222. The Texas Court of Criminal Appeals, though, has announced that "*Bearden* prescribes a mandatory judicial directive, not a prosecutorial evidentiary burden." *Gipson*, 383 S.W.3d at 157. Since *Bearden* does not create an evidentiary burden, this line of cases is inapposite to the issue of whether a plea of "true" waived *Bearden*.

In *Lively*, this Court held that a plea of "true" does not waive a violation of *Bearden* when the State did not allege that the failure to pay was willful. *Lively*, 338 S.W.3d at 145. The State does not attempt to distinguish *Lively* or explain why we should deviate from our prior precedent. In this case, the State did not allege that Rusk's failure to pay was willful. The plea of "true" was an admission that fees had not been paid, but not an admission of anything else. Thus, as in *Lively*, the plea of "true" was not an admission of willful refusal to pay.

The plea of "true" was not a waiver of *Bearden*. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). A failure to pay fees is a violation of the terms of community supervision, but only a willful failure to pay fees can support a revocation. As noted above, revocation is not the only option available upon a finding that a community supervision condition has been violated. Further, at trial, Rusk extensively objected to the revocation without an inquiry into his ability to pay demonstrating that no intentional relinquishment of the right had occurred. Rusk's plea of "true" was only an admission that he violated the terms of his community supervision by failing to pay the fees; it was not an admission of willfulness or a waiver of the trial court's duty to

14

inquire into Rusk's ability to pay. We conclude that Rusk did not waive any violation of *Bearden* by pleading true.

The trial court made no effort to comply with the mandatory judicial directive of *Bearden*. Despite Rusk's objection, the trial court failed to make any inquiry into whether Rusk made sufficient bona fide efforts to pay. Without such an inquiry into Rusk's ability to pay, the willful failure to pay exception of *Bearden* has not been established.

The Texas Court of Criminal Appeals, in *Gipson*, instructed that imprisonment is permitted, even in the absence of a willful failure to pay, if the alternatives to imprisonment are not adequate in a particular situation to meet the State's interest in punishment and deterrence. However, the United States Supreme Court has observed:

> The decision to place the defendant on probation, however, reflects a determination by the sentencing court that the State's penological interests do not require imprisonment. A probationer's failure to make reasonable efforts to repay his debt to society may indicate that this original determination needs reevaluation, and imprisonment may now be required to satisfy the State's interests. But a probationer who has made sufficient bona fide efforts to pay his fine and restitution, and who has complied with the other conditions of probation, has demonstrated a willingness to pay his debt to society and an ability to conform his conduct to social norms.

*Bearden*, 461 U.S. at 670 (citations omitted). The Court further reasoned that the government's interest in ensuring that the fees and restitution are paid "is fully served . . . by revoking probation only for persons who have not made sufficient bona fide efforts to pay." *Id*.

The State does not argue there are interests which the alternatives to imprisonment are insufficient to meet. It is a cogent point that the record is completely silent on this issue and that alternatives to imprisonment did exist. One alternative would have been to reduce the amount of the monthly payments, but expand the number of months over which the fine would be paid so

15

the same amount would be paid.[18]   Another alternative would be to order Rusk to perform community service in lieu of the fees.  The record does not contain any consideration of alternatives to imprisonment or any support for a conclusion that these alternatives would be inadequate to meet the State's interests.  The silent record in this case does not support a conclusion that Rusk failed to make reasonable efforts to repay his debt to society or that the original determination that community supervision was appropriate needs re-evaluation.

Neither exception recognized in *Bearden* has been established.  The trial court abused its discretion in revoking Rusk's community supervision without inquiring into Rusk's ability to pay or in the absence of a record supporting a re-evaluation of whether alternatives to imprisonment would be insufficient to meet the State's interests.[19]

**Conclusion**

The sole ground for revoking Rusk's community supervision was his failure to pay fees—a fact which was admitted by Rusk.  The State, though, failed to prove by a preponderance of the evidence that Rusk's failure to pay the fees was willful in violation of Article 42.12,

---

[18]If necessary, the length of community supervision can be extended not to exceed ten years.  TEX. CODE CRIM. PROC. ANN. art. 42.12, § 22 (West Supp. 2012).

[19]We note that the Texas Court of Criminal Appeals has suggested a harmless error analysis is inappropriate when the standard of review is an abuse of discretion.  *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (suggesting).  To the extent a harmless error review might be appropriate, the constitutional error resulted in harm. *See Cain*, 947 S.W.2d at 264 (Except for structural errors, "no error . . . is categorically immune to a harmless error analysis.").  As constitutional error, our standard of review is governed by the *Chapman* test as codified in Rule 44.2(a) of the Texas Rules of Appellate Procedure.  *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). Rule 44.2(a) provides that constitutional error requires reversal of the judgment "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."  TEX. R. APP. P. 44.2(a).  In conducting our analysis, we must consider the collateral implications of the error including "a probable affect [sic] on the harshness of the punishment."  *Higginbotham v. State*, 807 S.W.2d 732, 737 (Tex. Crim. App. 1991).  The constitutional error resulted in Rusk being imprisoned rather than remaining on community supervision.  The record does not support a conclusion, beyond a reasonable doubt, that the error was harmless.  Rusk has established reversible error.

16

Section 21(c) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 42.12, § 21(c). Further, the trial court failed to follow the mandatory judicial directive announced in *Bearden* requiring an inquiry into Rusk's ability to pay. *See Bearden*, 461 U.S. at 672. Since the sole ground was insufficient to support revocation,[20] the trial court abused its discretion.

For the reasons stated, we reverse the trial court's judgment revoking Rusk's community supervision and remand this case to the trial court for further proceedings consistent with this opinion.

Bailey C. Moseley
Justice

Date Submitted: January 23, 2013
Date Decided: February 12, 2013

Publish

---

[20]If a single ground for revocation is supported by a preponderance of the evidence and is otherwise valid, then an abuse of discretion is not shown. *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); *T.R.S.*, 115 S.W.3d at 321.